[Civ. No. 665.   Third Appellate District.—February 8, 1910.]

FRANKY R. COFFIN, Appellant, v. W. S. KINGSBURY, Surveyor General, Respondent.

STATE LANDS—DEED TO STATE FOR DELINQUENT TAXES—CONDITION OF RESALE—PAYMENT OF TAXES AND PENALTIES—CANCELLATION—SECOND PAYMENT NOT REQUIRED.—After state lands upon which a certificate of purchase was issued without other payment than twenty per cent of the price were sold and deeded to the state for delinquent taxes, upon resale thereof, the first applicant is required by law to repay the state for the taxes and penalties, but where his application is canceled after such repayment, no second repayment thereof is required of a subsequent applicant, but his purchase may be made under the general provisions of law for the sale of state lands.

Id.—Construction of Political Code—Collection of Unpaid Revenue—Double Collection not Intended.—The provision of section 3788 of the Political Code, requiring repayment of delinquent taxes and penalties in case of resale of unpaid lands deeded to the state for delinquent taxes, is intended as a provision for the collection and disposition of unpaid revenue, and when that revenue is once collected as a condition of repurchase, that section is not to be construed as requiring a second collection thereof, as a condition of a second application for purchase.

APPEAL from a judgment of the Superior Court of Sacramento County.    C. N. Post, Judge.

The facts are stated in the opinion of the court.

Pardee & Pardee, and Wahrhaftig & Shinn, for Appellant.

U. S. Webb, Attorney General, and M. C. Glenn, Deputy Attorney General, for Respondent.

BURNETT, J.—A proceeding was brought in the superior court for a writ of mandate to compel the respondent to file an application presented by appellant for the purchase of certain school lands. It appears, as stated by respondent, that in the year 1889 a similar application was made by one Billington, who paid twenty per cent of the purchase price and received a certificate of purchase. He assigned his certificate to George R. Fletcher. The latter permitted the taxes to become delinquent and his interest was sold through a tax sale. Thereafter a deed was made to the state; and pursuant to the provisions of section 3785 of the Political Code, the deed was forwarded to the surveyor general. According to said section the lands thereupon again became subject to entry and sale, subject to the provisions of section 3788 of said Political Code. On June 8, 1908, William R. Mawer applied for the same lands, and, under the provisions of said section 3788, he paid into the treasury a sum equal to the delinquent taxes, etc., which existed at the time of the sale to the state. The application of Mawer was subsequently canceled by the surveyor general for the reason that Mawer failed to furnish the necessary proof as to the character of the land. Afterward, one M. P. Barnes presented his application for the said lands, and the surveyor general required him to pay

only the purchase price, for the reason that in the opinion of the surveyor general the taxes and penalties had been fully satisfied and paid on the application of said Mawer, and nothing remained due for the same at the time the said Barnes made his application. Acting upon this theory, respondent declined to file the subsequent application of appellant of the date of April 2, 1909.

It is the contention of appellant that the legislature, in said section 3788, ''prescribes the manner in which and the terms upon which state lands of a certain class, to wit, lands which have been entered, but upon which the full purchase price has not been paid, and which have been sold and deeded to the state for nonpayment of taxes, shall be sold and disposed of. And by the terms of the section, we find that 'the surveyor general shall not permit an entry, or make a sale of any lands thus deeded to the state, except upon the previous payment into the state treasury, as other moneys are required to be paid therein, in addition to the price of said lands as compared with the prices fixed for other lands of like character, by the person or persons proposing to make the entry or purchase, of a sum equal to the delinquent taxes, penalties, costs and accruing costs, by virtue whereof the state became a purchaser of the lands thus sought to be entered or purchased, and also all delinquent taxes, penalties and costs which may have accrued upon such lands from and subsequent to the date of the sale to the state, in pursuance whereof the state received a deed therefor.' It appears clearly from these provisions that the legislature intended to fix, and did fix, a different price on this class of lands, as compared with the price fixed for other lands of like character. The price thus fixed is the price fixed for other lands of like character, plus a sum equal to the taxes, penalties, costs and accruing costs by virtue whereof the state became a purchaser of the lands, etc. And this sum equal to the said taxes, penalties and costs is in terms required to be paid 'by the person or persons proposing to make the entry or purchase.' ''

On the other hand, to state respondent's position, we quote quite fully from his brief as follows: ''The state school lands are offered for sale at the rate of $1.25 per acre. (Pol. Code, sec. 3494.) Title VIII, within which the last-named section is found, deals with 'property of the state' and also within

this title are contained the provisions as to the sale of school lands. Section 3788 is primarily a section concerning revenue and the collection thereof, and is not in any sense, except in a secondary way, a statute granting any right to purchasers of state land; and in this light the section should be considered. The last-named section is found in title IX of the Political Code, covering the subject of 'revenue,' and the chapter within which section 3788 falls is one dealing with the 'collection of property taxes.' There can be no doubt, therefore, that the main object and purpose of the latter section is to enable the state to collect delinquent taxes, and not for the purpose of fixing the price of school lands. If this be the purpose of the section, it follows that, when the object contemplated thereby has been accomplished, the provisions of the section referring to the delinquent taxes have no further application. . . . We submit that the section, considered in this entirety, is free from ambiguity or doubt. It cannot be given the construction contended for by appellant, when so considered. It provides that after the deed referred to in section 3785 shall be filed with the surveyor general, the lands shall again become subject to entry and sale, in the same manner and subject to the same conditions, as apply to other state lands of like character, but that the surveyor general shall not permit an entry or make a sale of such lands, except upon the previous payment into the state treasury . . . of a sum equal to the delinquent taxes, penalties and costs which may have accrued upon such lands prior and subsequent to the date of the sale to the state. The section proceeds: 'The money thus paid into the treasury shall be distributed in the manner prescribed in section three thousand eight hundred and sixteen; provided that the moneys received for twenty per cent of the purchase money, and accruing interest together with the principal in case of full payment on the lands, shall be distributed by the surveyor general, in the manner now provided by law for such distribution.' Turning to section 3816 it will be found that that section provides for the apportionment of taxes, penalties, etc., on redemption, the county, of course, receiving its proper proportion of such amount. With the latter section incorporated within section 3788, the argument that appellant advances must necessarily fall.''

In other words, a different disposition is made of the redemption money and the purchase price of the land, and they are thus clearly treated as separate and distinct.

We are entirely satisfied that when the property has been sold to the state, as in the case at bar, the law contemplates only one payment of the taxes and penalties, etc., as a condition precedent to the filing of an application for the purchase of said land and the payment of the purchase price. When Mawer paid into the treasury the sum prescribed, the state was entirely reimbursed, and the land was in exactly the same condition as though no application had ever been made for its purchase. It was, in other words, subject to application as provided in said section 3494 of the Political Code. It is not contended that Mawer could recover the money thus paid, and it is equally untenable that the status of the land is not entirely restored by the said payment of the "back taxes."

It is true that said section 3788 provides that the surveyor general shall not permit an entry or make a sale of any lands thus deeded to the state except upon the said payment of the delinquent taxes, etc., "by the person or persons proposing to make the entry or purchase," but it is clear that the statute has in view the situation after a sale of the land to the state. Thus, before the purchase price can be accepted the payment of the penalties must be made by the person or persons proposing to make the entry or purchase. There is nothing in the context requiring that this payment of the penalties shall be repeated.

We may add that a perusal of the various sections of the Political Code in reference to the collection of the revenue furnishes additional confirmation of the legislative intent that only one payment of the taxes assessed and accruing penalties is contemplated.

We see no reason to disturb the conclusion of the trial court and the judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1910.